UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

MARIA D. GARCIA, as surviving spouse,
as Administrator and Personal
Representative of the Estate of Jose Garcia
and on behalf of her minor children
Gabriela Garcia and Luis Garcia,

Plaintiff,

-vs-                                                              Case No.  5:06-cv-220-Oc-10GRJ

VANGUARD CAR RENTAL USA, INC., a
Delaware corporation, VANGUARD
RENTAL (BELGIUM) INC., a Florida
corporation, NATIONAL RENTAL (US),
INC., a Delaware corporation f/k/a National
Car Rental, ALAMO FINANCING, L.P., a
foreign limited partnership, ALAMO RENT-
A-CAR (CANADA) Inc., a Florida
corporation, GREGORY DAVIS,

Defendants.
_____

## O R D E R

On August 10, 2005, President Bush signed into law the Safe, Accountable, Flexible,

Efficient Transportation Equity Act: A Legacy for Users ("SAFETEA-LU"), Pub. L. No. 109-

59, 119 Stat. 1144.  Included in this law are provisions codified at 49 U.S.C. § 30106 (the

"Graves Amendment") which expressly preempt all state vicarious liability schemes that

impose liability on lessors of motor vehicles where the vehicle is involved in an accident

through no fault of the lessor.  The application of this recently-enacted law is at the heart

of this and two other related lawsuits pending in this Court, all three of which revolve around a car accident that occurred in Marion County, Florida, on February 2, 2005.

These three related cases are now before the Court for consideration of Defendants Vanguard Car Rental USA, Inc., Vanguard Rental (Belgium) Inc., National Rental (US) Inc., Alamo Financing, L.P., and Alamo Rent-A-Car (Canada) Inc.'s Motion for Summary Judgment (Doc. 26).[1]  These Defendants contend that the Graves Amendment preempts all of the Plaintiffs' state law claims against them which are premised on a theory of vicarious liability.  The Plaintiffs have filed a response in opposition (Doc. 31), and the motion is ripe for disposition.  For the reasons discussed below, the Court finds that the Lessor Defendants' motion is due to be granted.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I.    The Parties

The relevant facts are not in dispute.  Defendants Vanguard Car Rental USA, Inc., National Rental (US), Inc., and Alamo Financing, L.P., (collectively the "Lessor Defendants"), are in the business of renting  automobile vehicles to customers on a short-term basis of less than one year.[2]  On  February 2, 2005, Defendant Gregory Davis rented

---

[1]The Defendants have styled their motion as "Petitioners' Motion for Summary Judgment" apparently in recognition of the fact that they are the Petitioners in a related declaratory judgment action, Case No. 5:05-cv-422-Oc-10GRJ, which the Court consolidated with the present case for all pre-trial proceedings.  However, because the Court directed that all pre-trial filings be made in the present case, the Court will refer to the Petitioners as Defendants.

[2]The Court previously determined that the other two corporate Defendants, Vanguard Rental (Belgium) Inc., and Alamo Rent-A-Car (Canada) Inc., were fraudulently joined in this case (continued...)

a Dodge Stratus from the Lessor Defendants in Orlando, Florida and began driving to Georgia.  While traveling through Marion County, Florida, Davis was involved in a three-car accident.  As a result of the accident, the driver and front-seat passenger of one of the other vehicles - Jose Garcia and Nelson Agustin Ruiz - were killed, and the back seat passenger - Israel Lopez - suffered serious injuries.  It is alleged that Davis caused the accident, and the Lessor Defendants do not challenge this theory.   However, all Parties agree that the Lessor Defendants were neither negligent nor engaged in any criminal wrongdoing which contributed to the accident.

## II.    Procedural History

As a result of this tragic accident, three separate lawsuits are now pending in this Court.  The first is this case, a wrongful death lawsuit filed on May 26, 2006 by Plaintiff Maria D. Garcia, as the surviving spouse and personal representative of the Estate of Jose Garcia, and on behalf of her  minor children, Gabriela Garcia and Luis Garcia.  (Doc. 2).  The Plaintiff originally filed this case against all of the Defendants  in the Circuit Court of the Fifth Judicial Circuit, in and for Marion County, Florida.  The Defendants removed the case to this Court on June 29, 2006 on the basis of diversity jurisdiction.  The Plaintiff

_____

[2](...continued)
in an attempt to defeat diversity jurisdiction, and that the Plaintiffs have no claims against them. (Docs. 21, 32).  Nevertheless, they remain parties in this case for purposes of an appeal (should there be one), and the Court's ruling on the present motion for summary judgment will apply equally to them.

moved to remand (Doc. 11), but the Court denied that motion on December 27, 2006 (Doc. 32).

The second case is a wrongful death lawsuit against the same Defendants filed by Plaintiffs Santos Ruiz and Agripina Borjas Miralda, individually, and Santos Ruiz as administrator and personal representative of the Estate of Nelson Ruiz and as legal guardian of Nelson Xavier Ruiz. See Ruiz v. Vanguard Car Rental USA, Inc., et al., Case No. 5:06-cv-221-Oc-10GRJ (Doc. 2). The Ruiz Plaintiffs also filed their case in the Circuit Court of the Fifth Judicial Circuit, in and for Marion County, Florida, and the Defendants removed the case to this Court on June 29, 2006. The Court denied the Ruiz Plaintiffs' motion to remand on December 27, 2006.[3]

The third, and oldest case is a declaratory judgment action filed by the Lessor Defendants against the Garcia and Ruiz Plaintiffs, as well as Israel Lopez, on October 7, 2005. See Vanguard Car Rental USA, Inc. et al. v. Maria Garcia, et al., Case No. 5:05-cv-422-Oc-10GRJ (Doc. 1). In the declaratory judgment action, the Lessor Defendants seek a ruling from the Court that the Graves Amendment preempts all State laws, including Florida's, which impose vicarious liability on the lessor of a motor vehicle where the lessor is not negligent or criminally liable for any injuries or damages. The Lessor Defendants

---

[3]See Case No. 5:06-cv-221-Oc-10-GRJ, Doc. 22.

seek a ruling that they cannot be held vicariously liable for any damages or injuries resulting from the February 2, 2005 accident involving Garcia, Ruiz, and Lopez.[4]

On November 1, 2006, the Magistrate Judge entered an Order consolidating all three related cases for purposes of pre-trial proceedings, and directed that all further filings be made in the Garcia case.  (Doc. 22).  The Order also permitted the Lessor Defendants to file in this case a single motion for summary judgment focused on the question of whether the Graves Amendment preempts the Garcia and Ruiz claims.  The Lessor Defendants did so on November 13, 2006 (Doc. 26), and the Garcia and Ruiz Plaintiffs filed their joint memorandum in opposition on December 4, 2006 (Doc. 31).  The Parties agree that resolution of this motion in favor of the Lessor Defendants would resolve all claims against the Lessor Defendants in the Garcia and Ruiz cases, and would also resolve the declaratory judgment action.

## SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  In applying this standard, the Court must examine the pleadings, depositions, answers to

---

[4]The Plaintiffs moved to dismiss the declaratory judgment action, which the Court denied on December 27, 2006 (Case No. 5:05-cv-422-Oc-10-GRJ, Docs. 12, 50).  The Lessor Defendants have settled all claims against Israel Lopez stemming from the declaratory action, and Lopez is no longer a party to any cases before this Court.  See Case No. 5:05-cv-422-Oc-10-GRJ, Docs. 46-48.

interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party." <u>Samples on Behalf of Samples v. Atlanta</u>, 846 F.2d 1328, 1330 (11th Cir. 1988).  As the Supreme Court held in <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact.  If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." <u>Rollins v. Techsouth</u>, 833 F.2d 1525, 1528 (11th Cir.  1987).  The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.

### DISCUSSION

The first question involves application of the Graves Amendment to Florida law. There appears to be agreement that the Graves Amendment preempts Florida's common law vicarious liability scheme as it pertains to lessors of motor vehicles.  The dispute is whether Florida Statute § 324.021(9)(b)(2), establishing damages caps on such vicarious liability claims, creates a separate and distinct cause of action against lessors of motor vehicles which is not preempted by the Graves Amendment.

The second question is whether the Graves Amendment is a constitutional exercise of Congress' preemptive powers under the Commerce Clause of the United States Constitution, Article I, § 8.  The only parties challenging this statute's constitutionality are

the <u>Garcia</u> and <u>Ruiz</u> Plaintiffs.  The constitutional issue arises in the event the Court first determines that the Graves Amendment preempts all of the Plaintiffs' claims against the Lessor Defendants.

**I.      Does the Graves Amendment Preempt Florida Statute § 324.021(9)(b)(2)?**

In their motion for summary judgment, the Lessor Defendants argue that Florida Statute § 324.021(9)(b)(2) merely sets forth caps on damages for which a lessor of motor vehicles could be held vicariously liable under Florida law.  Because the Graves Amendment preempts such vicarious liability claims, it must necessarily also preempt any statutes setting damages caps on such claims.  The Plaintiffs, however, argue that the Graves Amendment does not erase the Lessor Defendants' liability, because Fla. Stat. § 324.021(9)(b)(2) is really a "financial responsibility law" that creates a separate cause of action against lessors of motor vehicles.  As such, the statute is expressly exempted from the Graves Amendments' preemption provisions.

In order to address this question, a brief discussion is appropriate concerning the history and purpose behind Florida's vicarious liability scheme as applied against lessors of motor vehicles.

A.      <u>Florida's Vicarious Liability Scheme</u>

Florida's vicarious liability doctrine as it pertains to lessors of motor vehicles is largely a creation of common law, and is otherwise known as the "dangerous instrumentality doctrine."  The dangerous instrumentality concept was first applied to motor

7

vehicles by the Florida Supreme Court in 1920.  <u>Southern Cotton Oil Co. v. Anderson</u>, 86 So. 629 (1920). The doctrine "imposes strict vicarious liability upon the owner of a motor vehicle who voluntarily entrusts that motor vehicle to an individual whose negligent operation causes damage to another."  <u>Estate of Villaneuva ex rel. Villanueva v. Youngblood</u>, 927 So. 2d 955 (Fla. Dist. Ct. App. 2006); <u>see also</u> <u>Southern Cotton</u>, 86 So. at 637.  The dangerous instrumentality doctrine was judicially adopted based on public policy concerns:

> The dangerous instrumentality doctrine seeks to provide greater financial responsibility to pay for the carnage on our roads. It is premised upon the theory that the one who originates the danger by entrusting the automobile to another is in the best position to make certain that there will be adequate resources with which to pay the damages caused by its negligent operation. If Florida's traffic problems were sufficient to prompt its adoption in 1920, there is all the more reason for its application to today's high-speed travel upon crowded highways.  The dangerous instrumentality doctrine is unique to Florida and has been applied with very few exceptions.

<u>Aurbach v. Gallina</u>, 753 So.2d 60, 62 (Fla.2000) (quoting <u>Kraemer v. Gen. Motors Acceptance Corp.</u>, 572 So.2d 1363, 1365 (Fla.1990)).

The Florida Supreme Court extended the dangerous instrumentality doctrine to lessors, thereby making them vicariously liable for the lessee's negligent operation of the motor vehicle, in 1959.  <u>Susco Car Rental System v. Leonard</u>, 112 So. 2d 832 (Fla. 1959). In 1999, the Florida Legislature passed a tort reform package which, among other things, created Florida Statute § 324.021(9)(b).  This section created an exception to the dangerous instrumentality doctrine for lessors of motor vehicles. As applicable to this case, § 324.021(9)(b) provides:

**(9) Owner, owner/lessor. --**

(b) *Owner/lessor*. -- Notwithstanding any other provision of the Florida Statutes or existing case law:

1.      The lessor, under an agreement to lease a motor vehicle for 1 year or longer which requires the lessee to obtain insurance acceptable to the lessor which contains limits not less than $100,000/$300,000 bodily injury liability and $50,000 property damage liability or not less than $500,000 combined property damage liability and bodily injury liability, shall not be deemed the owner of said motor vehicle for the purpose of determining financial responsibility for the operation of said motor vehicle or for the acts of the operator in connection therewith; further, this subparagraph shall be applicable so long as the insurance meeting these requirements is in effect. The insurance meeting such requirements may be obtained by the lessor or lessee, provided, if such insurance is obtained by the lessor, the combined coverage for bodily injury liability and property damage liability shall contain limits of not less than $1 million and may be provided by a lessor's blanket policy.

2.      The lessor, under an agreement to rent or lease a motor vehicle for a period of less than 1 year, shall be deemed the owner of the motor vehicle for the purpose of determining liability for the operation of the vehicle or the acts of the operator in connection therewith only up to $100,000 per person and up to $300,000 per incident for bodily injury and up to $50,000 for property damage. If the lessee or the operator of the motor vehicle is uninsured or has any insurance with limits less than $500,000 combined property damage and bodily injury liability, the lessor shall be liable for up to an additional $500,000 in economic damages only arising out of the use of the motor vehicle. The additional specified liability of the lessor for economic damages shall be reduced by amounts actually recovered from the lessee, from the operator, and from any insurance or self-insurance covering the lessee or operator. Nothing in this subparagraph shall be construed to affect the liability of the lessor for its own negligence.

Fla. Stat. § 324.021(9)(b)(1), (2).

When this statute is distilled, it means that short term lessors of automobiles are

vicariously liable only up to $100,000 per person and up to $300,000 total for bodily injury

and up to $50,000 for property damage arising from a vehicular accident.  Further, in this instance, if Gregory Davis is found to be either uninsured or has insurance with limits less than $500,000 combined property damage and bodily injury liability, the Lessor Defendants will be liable for up to an additional $500,000 in economic damages.  Fla. Stat. § 324.021(9)(b)(2).

This statutory provision is contained within Chapter 324 of the Florida Statutes, entitled "Financial Responsibility."  The purpose of Chapter 324 is set forth in Fla. Stat. § 324.011:

> It is the intent of this chapter to recognize the existing privilege to own or operate a motor vehicle on the public streets and highways of this state when such vehicles are used with due consideration for others and their property, and to promote safety and provide financial security requirements for such owners or operators whose responsibility it is to recompense others for injury to person or property caused by the operation of a motor vehicle.

Section 324.021(9)(b) is but one part of a lengthy statute entitled "Definitions, minimum insurance required," which defines terms such as "owner/lessor," "motor vehicle," and "operator."  Fla. Stat. § 324.021(1), (3), and (9).  The statute also defines "proof of financial responsibility" as requiring "proof of ability to respond in damages for liability on account of crashes arising out of the use of a motor vehicle" in the amount of $10,000 per person or $20,000 per accident for bodily injury, and $10,000 for property damage per accident.  Fla. Stat. § 324.021(7).

B.    The Graves Amendment

Florida's vicarious liability laws concerning lessors of motor vehicles remained largely unchanged until August 10, 2005, the date the Graves Amendment became effective.  This federal statute provides, in pertinent part:

**Section 30106.  Rented or leased motor vehicle safety and responsibility.**

**(a) In general.**– An owner of a motor vehicle that rents or leases the vehicle to a person (or an affiliate of the owner) shall not be liable under the law of any State or political subdivision thereof, by reason of being the owner of the vehicle (or an affiliate of the owner), for harm to persons or property that results or arises out of the use, operation, or possession of the vehicle during the period of the rental or lease, if–

**(1)** the owner (or an affiliate of the owner) is engaged in the trade or business of renting or leasing motor vehicles; and
**(2)** there is no negligence or criminal wrongdoing on the part of the owner (or an affiliate of the owner).

**(b) Financial responsibility laws.**– Nothing in this section supersedes the law of any State or political subdivision thereof –

**(1)** imposing financial responsibility or insurance standards on the owner of a motor vehicle for the privilege of registering and operating a motor vehicle; or
**(2)** imposing liability on business entities engaged in the trade or business of renting or leasing motor vehicles for failure to meet the financial responsibility or liability insurance requirements under State law.

**(c) Applicability and effective date.** – Notwithstanding any other provision of law, this section shall apply with respect to any action commenced on or after the date of enactment of this section without regard to whether the harm that is the subject of the action, or the conduct that caused the harm, occurred before such date of enactment.

By its express language, the Graves Amendment preempts all state statutory and common law to the extent those laws hold owners in the business of renting or leasing motor vehicles vicariously liable for the negligence of drivers, except when there is negligence or criminal wrongdoing on the part of the owner.  As it pertains to this case, the federal statute would preempt all of the <u>Garcia</u> and <u>Ruiz</u> Plaintiffs' claims against the Lessor Defendants, since the Plaintiffs' lawsuits were not filed until after August 10, 2005 and do not allege any negligence or criminal wrongdoing. In fact, neither party disputes the Graves Amendment's preemption of Florida's common-law dangerous instrumentality doctrine as it relates to lessors of motor vehicles.  The question remains, however, whether the Graves Amendment also preempts Fla. Stat. § 324.021(9)(b)(2).

C.   Application of the Graves Amendment to Fla. Stat. § 324.021(9)(b)(2)

Whether the Graves Amendment preempts § 324.021(9)(b) turns on an interpretation of the federal statute itself, namely, the meaning of the phrase "financial responsibility laws."  "The starting point for [the] interpretation of a statute is always its language," <u>Community for Creative Non-Violence v. Reid</u>, 490 U.S. 730, 739 (1989), thus "courts must presume that a legislature says in a statute what it means and means in a statute what it says there."  <u>Connecticut Nat. Bank v. Germain</u>, 503 U.S. 249, 253-54 (1992).  The Court must therefore first review the text of the Graves Amendment itself, and if "the words of [the] statute are unambiguous, [any] judicial inquiry [would be] complete."  <u>Id.</u> at 254.

The Graves Amendment does not define "financial responsibility laws," and neither side has pointed to any other provision of the SAFETEA-LU Act which defines this term.

12

Because Congress did not define "financial responsibility laws," it must have intended to give that term its ordinary meaning.  <u>Consolidated Bank, N.A. v. United States Dep't of Treasury</u>, 118 F.3d 1461, 1464 (11th Cir.1997) ("In the absence of a statutory definition of a term, we look to the common usage of words for their meaning.").  Blacks Law Dictionary defines the term "financial responsibility act" as "[a] state statute conditioning license and registration of motor vehicles on proof of insurance or other financial accountability."[5]  It also defines "financial responsibility clause" as "[a] provision in automobile insurance policy stating that the insured has at least the minimum amount of liability insurance coverage required by a state's financial responsibility law."[6]  Thus, the common usage of the term "financial responsibility laws" means requiring an owner and/or operator of a motor vehicle to possess and have proof of minimum levels of insurance.[7]

---

[5]Blacks Law Dictionary at 663 (8th edition, 1994).

[6]<u>Id.</u>

[7]Given the unambiguous and clear language of the Graves Amendment, there is no need to consider extrinsic materials, such as legislative history.  <u>Consolidated Bank,</u> 118 F.3d at 1463-64.  However, even if legislative intent were considered, the very limited historical materials that address the Graves Amendment support the Court's conclusion that the intent of the act is to eliminate vicarious liability, yet preserve state laws requiring minimum levels of motor vehicle insurance.  <u>See, e.g.</u>, H.R. Rep. 109-14, H.R. Rep.  No. 14 (March 8, 2005) (noting that the Graves Amendment "[e]liminates liability under state law for an owner of a motor vehicle or their affiliate who is engaged in the business of renting and leasing motor vehicles provided there is no negligence or criminal wrongdoing on the part of the motor vehicle owner or affiliate.  The owner or affiliate must maintain the required state limits of financial responsibility for each vehicle in accordance to the state where the vehicle is registered.")

Neither party disputes this interpretation of the common meaning of the term "financial responsibility laws."[8]   The Plaintiffs, however, contend that Fla. Stat. § 324.021(9)(b)(2) satisfies this definition.   In making such an assumption, the Plaintiffs mis-interpret the two sub-paragraphs immediately following the term "financial responsibility laws" in the Graves Amendment as they apply to Florida law.   These two sub-paragraphs provide further definition and guidance as to what types of "financial responsibility laws" are exempt from federal preemption.[9]

The first sub-section says that state laws which "impos[e] financial responsibility or insurance standards on the owner of a motor vehicle for the privilege of registering and operating a motor vehicle" are not preempted.   49 U.S.C. § 30106(b)(1).   The second sub-section exempts state laws which "impos[e] liability on business entities engaged in the trade or business of renting or leasing motor vehicles for failure to meet the financial responsibility or liability insurance requirements under State law."   § 30106(b)(2).   In other

_____

[8]In fact, the Plaintiffs point out in their response that the common purpose of financial responsibility laws is to "induce motor vehicle owners or operators to provide security for the compensation of innocent persons who are injured, in person or property, through the faulty operation of the motor vehicle."   60 C.J.S. Motor Vehicles § 223.   See Plaintiffs' Memorandum in Opposition (Doc. 31), p. 5.

[9]These more specific provisions must be considered in interpreting the entire section of the Graves Amendment concerning "financial responsibility laws."   See Stenberg v. Carhart, 530 U.S. 914, 998 (2000) (noting that it is a "fundamental canon of construction that statutes are to be read as a whole) (Thomas, J., dissenting); Hughey v. United States, 495 U.S. 411, 419 (1990) ("a general statutory term [is interpreted] in light of the specific terms that surround it."); United States v. DBB, Inc., 180 F.3d 1277, 1281 (11th Cir.1999) ("We do not look at one word or term in isolation, but instead we look to the entire statutory context.").

words, both sub-sections exempt state laws that impose some sort of financial responsibility - *i.e.* insurance - requirements on owners of motor vehicles.  A review of Fla. Stat. § 324.021(9)(b)(2) shows that it does not fall within either sub-section.

The Florida Statute in question does not create insurance standards for entities that register and operate motor vehicles within Florida.  Nor does it impose liability on owners of motor vehicles for failing to comply with state insurance requirements.  A careful reading of § 324.021(9)(b)(2) shows that it does not impose any insurance requirements on anyone or even mention the term "financial responsibility."  This section speaks solely in terms of "liability."  A lessor of motor vehicles in the state of Florida could operate without any insurance whatsoever, and would never fall within the scope of § 324.021(9)(b)(2).  Rather, this section simply means that if you are engaged in the business of leasing or renting motor vehicles for periods of less than a year, and if you are sued under a theory of vicarious liability, the maximum amount that you will be liable for (with or without insurance) cannot exceed $350,000.

The Plaintiffs place great emphasis on the provisions in § 324.021(9)(b)(2) which raise the liability caps by an additional $500,000 if the lessor leases a motor vehicle to someone who carries insurance of less than $500,000.  According to the Plaintiffs, this sentence establishes "the outward bounds of financial responsibility – $500,000 – then uses a carrot – lower financial responsibility –  to entice lessors to help assure that lessees

will be financially responsible."[10]  The Plaintiffs are simply wrong.  First, this provision does

not impose any liability on lessors for failing to meet Florida's insurance requirements, it

simply states that the most a motor vehicle lessor can potentially be held vicariously liable

for may increase by another $500,000 in certain circumstances.   It is a contingency

provision, effectively creating a cost-benefit risk analysis for motor vehicle lessors.  A lessor

could choose to rent to operators who have lower levels of insurance without any

consequences or penalties by the state.   In such a situation, the lessor would merely

assume the risk of possibly being liable for a higher level of damages should an accident

and lawsuit ensue.

Second, and perhaps more importantly, the Court is unaware of any Florida financial

responsibility or insurance requirement that owners and/or operators of motor vehicles

must possess insurance in the amount of $500,000 combined property and personal injury.

To the contrary, § 324.021 itself defines the minimum standards for insurance in Florida:

> Proof of financial responsibility. – That proof of ability to respond in damages
> for liability on account of crashes arising out of the use of a motor vehicle:
> (a) In the amount of $10,000 because of injury to, or destruction of, property
> of others in any one crash; and
> (b) Subject to such limits for one person, in the amount of $20,000 because
> of bodily injury to, or death of, two or more persons in any one crash;
> (c) In the amount of $10,000 because of injury to, or destruction of, property
> of others in any one crash . . .

---

[10]See Plaintiff's Memorandum in Opposition, p. 7.

Fla. Stat. § 324.021(7).[11]   There is nothing in § 324.021(9)(b)(2) that imposes any penalties or liabilities on lessors of motor vehicles who do not maintain these minimum levels of insurance.[12]

While not dispositive, Florida case law supports the Court's interpretation that § 324.021(9)(b)(2) is simply a cap on strict vicarious liability damages and nothing more. See, e.g., Lewis v. Enterprise Leasing Co., 912 So. 2d 349, 351 (Fla. 3d DCA 2005) ("The legislature enacted section 324.021(9)(b), Florida Statutes, in order to limit such liability and to shift responsibility for damages arising out of motor vehicle accidents from innocent owners and lessors of motor vehicles to those at fault."); Enterprise Leasing Co. v. Hughes, 933 So. 2d 832, 838 (Fla. 1st DCA 2002) (holding that § 324.021(9)(b)(2) "merely limits the liability of short-term lessors. . . .   The statute reduces responsibility for damages arising from the fault of others but preserves full liability for compensatory damages caused by one's own fault.   The statute merely caps the amount of damages for

---

[11]See also Fla. Stat. § 324.022 (the requirement of having sufficient financial responsibility for property damage can be met by having an insurance policy that provides coverage in the amount of at least $30,000 for combined property damage and bodily injury liability for any one crash), and Fla. Stat. § 627.733 (setting forth Florida's Motor Vehicle No-Fault Personal Injury Protection insurance standards).   These statutory provisions clearly are of the type saved from preemption under the Graves Amendment, because they impose "financial responsibility or insurance standards on the owner of a motor vehicle for the privilege of registering and operating a motor vehicle."

[12]It is Fla. Stat. § 324.051, for example, that achieves this object by authorizing the State to suspend the license and registration of a motor vehicle owner or operator who does not have the required minimum levels of motor vehicle insurance at the time of an accident.   Under this provision, an owner or operator of a motor vehicle is directly penalized for not having sufficient levels of insurance.

the vicarious liability of the lessor."); Folmar v. Young, 591 So. 2d 220 (Fla. 4th DCA 1994) (concluding that § 324.021(9)(b) is an exception to the dangerous instrumentality doctrine and is not a statutory penalty for failing to provide proof of financial responsibility).

The legislative history behind the creation of § 324.021(9)(b)(2) also supports this conclusion.[13] See, e.g., Fla. Staff. An., H.B. 775, May 13, 1999 (noting that one of the purposes of § 324.021(9)(b) is to "encourage personal responsibility by shifting emphasis from compensation based primarily upon loss toward responsibility based upon fault . . . . [T]he new limitations on . . . automobile owner liability both reduce responsibility for damages arising from the fault of others while preserving full liability for compensatory damages caused by one's own fault."); Fla. Staff An., H.B. 775, February 12, 1999 (Section 324.021(9)(b) "limits the vicarious liability of a motor vehicle owner or a rental company that rents or leases motor vehicles. . . .  This section limits damages awardable under Florida's common law dangerous instrumentality doctrine, which currently allows a motor vehicle owner to be held liable for injuries caused by the negligence of anyone entrusted to use the motor vehicle."); Fla. Staff An., H.B. 551, March 17, 2005 ("A company that is a holder of a motor vehicle or equity interest in a motor vehicle title for a rental company may face fewer or less costly lawsuits because of the limits of liability that the holder will qualify for under the terms of the bill.").  Thus, it is clear that § 324.021(9)(b) was intended to shift

---

[13]Again, given the unambiguous language of § 324.021(9)(b)(2), the Court is not required to consider its legislative history.  However, a discussion of such extrinsic materials, as well as interpretative caselaw, can be instructive.

and/or limit financial liability; it does not create insurance requirements or force owners and operators of motor vehicles to maintain a certain level of insurance, and it certainly does not create a private right of action of any kind.

Lastly, Plaintiffs argue that Fla. Stat. § 324.021(9)(b)(2) should not be preempted by the Graves Amendment for public policy reasons.  According to the Plaintiffs, "[a]ssigning ultimate financial responsibility to lessors advances the policy goal of preventing the public from bearing responsibility for the costs of motor vehicle accidents."[14]  In light of both the Graves Amendment's and § 324.021(9)(b)(2)'s clear and unambiguous language, the Court need not look to public policy concerns to interpret these two statutes; it must be presumed that Congress took such policy concerns into consideration when drafting the Graves Amendment, and that it meant what it said.  Moreover, the Graves Amendment does not completely destroy this policy:  motor vehicle lessors may still be held directly liable or vicariously liable, and these damages caps will still apply, when the lessors engage in negligence or criminal wrongdoing relating to a motor vehicle accident.

All of this analysis drives the conclusion that vicarious liability of motor vehicle lessors under Florida's dangerous instrumentality doctrine is now preempted by federal law.  Consequently, Fla. Stat. § 324.021(9)(b)(2) also is preempted.  That statute is not a "financial responsibility law," it is merely a damages cap on other causes of action, and

---

[14]Plaintiff's Memorandum in Opposition, p. 8.

cannot survive separate and apart from Florida's dangerous instrumentality doctrine. Accordingly, the Plaintiffs' claims against the Lessor Defendants cannot go forward.

## II.     Is the Graves Amendment Constitutional?

Having determined that the Graves Amendment preempts Florida's dangerous instrumentality doctrine as well as Fla.  Stat. § 324.021(9)(b)(2), the Court must address the Plaintiffs' second argument - that the Graves Amendment is an unconstitutional exercise of Congress' Commerce Powers under Article I, § 8 of the United States Constitution.  The Court finds that it is not.

### A.     The Scope of Congress' "Commerce Clause" Powers

Article I, Section 8 of the United States Constitution provides that "[t]he Congress shall have the power to . . . regulate commerce . . . among the several states . . . ."  U.S. Const., art.  I, § 8, cl.  3.  In addition, Article VI of the United States Constitution provides that

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const., art.  VI, cl.  2.  Pursuant to the Supremacy Clause, state law may be preempted in three circumstances: (1) through express statutory language; (2) where federal law has so thoroughly occupied a legislative field as to make a reasonable inference that there is no room for the state to supplement it; and (3) where a state law

conflicts with a federal law.  <u>New York State Conference of Blue Cross and Blue Shield</u>

<u>Plans v.  Travelers Ins.  Co.</u>, 514 U.S. 645, 654 (1995); <u>Pacific Gas & Elec.  Co.  v.  State</u>

<u>Energy Resources Conservation and Development Comm'n</u>, 461 U.S. 190, 203-04 (1983);

<u>Rice v.  Santa Fe Elevator Corp.</u>, 331 U.S. 218, 230 (1947).  This case presents the first

circumstance - express statutory language.

    As the Plaintiffs acknowledge, Congress' Commerce powers are vast and must be

given great deference.  The Supreme Court has consistently held that it "must defer to a

congressional finding that a regulated activity affects interstate commerce, if there is any

rational basis for such a finding."  <u>Hodel v.  Virginia Surface Mining & Reclamation Ass'n,</u>

<u>Inc.</u>, 452 U.S. 264, 276 (1981).  These powers, however, are not without limits; they must

have some nexus to interstate commerce.  As the Supreme Court stated in <u>United States</u>

<u>v.  Lopez</u>, 514 U.S. 549 (1995), the scope of Congress' Commerce powers has evolved

over time to cover three categories of activity: (1) the channels of interstate commerce; (2)

the instrumentalities of interstate commerce; and (3) intrastate activities that substantially

affect interstate commerce.  <u>Lopez</u>, 514 U.S. at 560.  The Lessor Defendants argue that

the Graves Amendment falls within each category, while the Plaintiffs contend that it falls

within none.

    B.    <u>The Channels of Interstate Commerce</u>

    This first category of Commerce Clause authority "concerns Congress' power to

regulate, for economic or social purposes, the passage of interstate commerce of either

people of goods."  <u>United States v.  Rybar</u>, 103 F.3d 273, 288-89 (3d Cir.  1996) (Alito, J.,

dissenting).   The Lessor Defendants argue that Congress appropriately invoked this authority because strict vicarious liability lawsuits against lessors of motor vehicles typically arise following an automobile accident that occurs on roads, streets, intrastate or interstate highways, all of which are channels of commerce.  See, e.g. Pierce County, Washington v. Guillen, 537 U.S. 129, 147 (2003) (upholding legislation aimed at improving safety in the "channel of commerce," including streets, roads and federal highways); State of Oklahoma ex rel.  Phillips v.  Guy F.  Atkinson Co., 313 U.S. 508 (1941) (recognizing that navigable waters, railroads, and highways are "channels of commerce" which can be regulated under Congress' Commerce powers); United States v.  Ballinger, 395 F.3d 1218, 1225-26 (11th Cir.  2005) ("channels of commerce are "the interstate transportation routes through which persons and goods move," and include highways, railroads, navigable waters, and airspace) (internal quotations and citations omitted).

The Plaintiffs admit that the Graves Amendment "arguably could fall within" this category of Commerce Clause powers "if it regulated state tort law as applied to lessors whose leased vehicles passed through interstate commerce."[15]  That is exactly what the Graves Amendment does.  There can be no dispute that leased vehicles routinely travel between states - in this very case, Gregory Davis was traveling from Florida to Georgia.  However, the Plaintiffs contend that the Graves Amendment goes too far - it also regulates

_____

[15]Plaintiffs' Memorandum, p.  31.

22

the leasing of motor vehicles, and related tort law actions where the vehicles never leave the state - and therefore is outside the scope of Congress' Commerce powers.

This is a distinction without a difference. Whether or not the products - motor vehicles - actually travel out of state, or whether the particular road in question leads out of state is irrelevant. "Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities." Lopez, 514 U.S. at 558. The fact that an accident which results in potential vicarious liability for lessors occurs on roads that are solely for intrastate travel is of no moment. See Atkinson, 313 U.S. at 522-24  (Congress can regulate channels of commerce such as highways and navigable waters, even if portions of those channels are no longer used for interstate commerce); Overstreet v. North Shore Corp., 318 U.S. 125 (1943) (roads that are not themselves interstate highways are still within the purview of Congress' Commerce powers as they may be feeders and extensions within the reach of the main channels of interstate commerce).

The Court therefore finds that the Graves Amendment is constitutional under the first category of Congress' Commerce Clause powers.[16]

---

[16]The Plaintiffs' reliance on United States v. Kenney, 91 F.3d 884 (7th Cir. 1996) is not persuasive. In that case, the Seventh Circuit was faced with a federal statute criminalizing the possession and transfer of machine guns. While the court found the statute constitutional under the third Commerce Power category because it substantially affected interstate commerce, it held that analysis under the "channels of commerce" category would be inappropriate because the transfers were not limited solely to those which crossed state lines. 91 F.3d at 889. In this case, however, the channels implicated are roads and highways, which are one of the most traditional "channels of commerce," even when the particular road in question does not directly lead to

(continued...)

C.      The Instrumentalities of Interstate Commerce

The Court also finds that the Graves Amendment is constitutional under the second category of Congress' Commerce Clause powers because the statute regulates the leasing and operating of motor vehicles which are "the quintessential instrumentalities of modern interstate commerce." United States v. Bishop, 66 F.3d 569, 588 (3d Cir. 1995). See also Ballinger, 395 F.3d at 1226 ("Instrumentalities of interstate commerce, . . . are the people and things themselves moving in commerce, including automobiles, airplanes, boats, and shipments of goods.").

Congress can regulate such instrumentalities "even though the threat may come only from intrastate activities," Lopez, 514 U.S. at 558, and this concept completely deflates the Plaintiffs' argument that the Graves Amendment does not appropriately regulate the instrumentalities of interstate commerce because its preemptive effect is not limited solely to instances where the leased vehicle leaves the state.  Congress could appropriately recognize that motor vehicles are routinely leased in one state and used for transportation to another, and it would be almost impossible to separate intrastate motor traffic from interstate motor traffic. See, e.g. Southern R. Co. v. United States, 222 U.S. 20, 27 (1911) (recognizing that Congress had the power to regulate boxcars that traveled exclusively intrastate because of their inherent mobility and connection to interstate commerce. "[I]t is no objection to such an exertion of [Commerce Clause] power that the

---

[16](...continued)
another state.

dangers intended to be avoided arise, in whole or in part, out of matters connected with intrastate commerce.").[17]  Indeed, this case itself demonstrates how leased motor vehicles are instrumentalities of interstate commerce.  Defendant Davis leased his vehicle from the Lessor Defendants in Florida in order to drive on interstate highways to Georgia, a transaction clearly implicating an instrumentality of interstate commerce.  The Court is also aware of instances where Florida's dangerous instrumentality doctrine has been applied to lessors of motor vehicles in Florida even where the accident occurs in another state that does not impose such strict vicarious liability.[18]

Thus it is clear that by preempting Florida's dangerous instrumentality doctrine, Congress is regulating an instrumentality of commerce.

D.    Intrastate Activities Substantially Affecting Interstate Commerce

Even if the Graves Amendment did not fall within the first two categories of Congress' Commerce Powers, it is constitutional under the third category - regulating intrastate activities that substantially affect interstate commerce.  This is the broadest of

---

[17]The Plaintiffs' reliance on dissenting opinions from two other circuit courts is not persuasive, particularly when the precedential effect, if any of these two decisions supports a finding that the Graves Amendment constitutionally regulates the instrumentalities of interstate commerce.  See United States v. McHenry, 97 F.3d 125 (6th Cir. 1996) (upholding federal carjacking statutes as constitutional exercise of Congress' Commerce Clause powers); United States v. Bishop, 66 F.3d 569 (3d Cir. 1995) (same).

[18]See, e.g. Wal-Mart Stores, Inc. v. Budget Rent-A-Car Systems, 567 So.2d 918 (Fla. 1st DCA 1990) (applying Florida's dangerous instrumentality doctrine to Florida rental car company who rented vehicle to Florida citizen, who was involved in an accident in Georgia, even though Georgia law applied to the underlying negligence claims); Stallworth v. Hospitality Rentals, Inc., 515 So.2d 413 (Fla. 1st DCA 1987) (applying Florida's dangerous instrumentality doctrine to Florida rental car company who rented car in Florida, which was involved in accident in Louisiana).

the three categories:  "even if [the] activity be local and though it may not be regarded as commerce, it may still, whatever its nature, be reached by Congress if it exerts a substantial economic effect on interstate commerce." Wickard v.  Filburn, 317 U.S. 111, 125 (1942). See also United States v. Women's Sportswear Mfg. Ass'n, 336 U.S. 460, 464 (1949) ("If interstate commerce [ultimately] feels the pinch, it does not matter how local the operation which applies the squeeze.").  In assessing the scope of Congress' authority the Court "need not determine whether [the activities in question], taken in the aggregate, substantially affect interstate commerce in fact, but only whether a "rational basis" exists for so concluding." Gonzales v.  Raich, 545 U.S. 1, 22 (2005). See also Lopez, 514 U.S. at 557; Hodel, 452 U.S. at 276-280.  In other words: "Due respect for the decisions of a coordinate branch of Government demands that we invalidate a congressional enactment only upon a plain showing that Congress has exceeded its constitutional bounds." Morrison, 529 U.S. at 607.

It is clear to the Court that Congress' attempt to regulate the motor vehicle rental industry by uniformly eliminating the costs of no fault vicarious liability claims, even where such costs relate to solely intrastate travel and accidents, substantially affects interstate commerce.  In fact, the car rental industry, together with airlines, railroads, and over the road bus and trucking enterprises, constitute the most visible components of modern interstate commerce.  Regulating the costs associated with the rental and operation of motor vehicles as "instrumentalities" of interstate commerce, on roads and interstate

highways which are "channels" of interstate commerce, must necessarily have an "impact" on interstate commerce.

The Plaintiffs posit numerous other arguments against this conclusion and in support of its contention that the Graves Amendment should be found unconstitutional: (1) that the federal statute does not regulate commerce or any sort of economic enterprise; (2) that the Graves Amendment is not part of a larger federal regulatory scheme, but is only a small portion of a lengthy appropriations bill which primarily focuses on providing funds for highway and bridge construction and repair; (3) that the statute is a "sharp departure" from a "longstanding pattern of federal regulatory statutes governing safety measures of motor vehicles generally;" (4) that the Graves Amendment fails under the tests and rationale set forth in Lopez, 514 U.S. 549, and United States v. Morrison, 529 U.S. 598 (2000); (5) that the Graves Amendments' preemption of vicarious liability claims against motor vehicle lessors "represents an incursion into state police powers - the power to define tort law applicable to purely local accidents with no connection to interstate commerce - not sanctioned by the Constitution;" (6) that the statute does not contain any express jurisdictional element such as "affecting interstate commerce" that might limit its reach to a discrete set of circumstances; and (7) that the Graves Amendment is unconstitutional because it does not contain any express congressional findings regarding its effects on interstate commerce.  All of these are strained contentions and none are persuasive either individually or taken as a whole.

### **CONCLUSION**

27

This is an important case of first impression.  No other federal court has analyzed the preemptive scope of the Graves Amendment, and there is a lack of persuasive Florida legal authority addressing the intersection of this Act with Fla. Stat. § 324.021(9)(b)(2).[19] Still, the plain language of the Graves Amendment, coupled with the plain language of Fla. Stat. § 324.021(9)(b)(2) clearly compel the conclusion that the Plaintiffs' claims against the Lessor Defendants are preempted.  It is equally clear that the Graves Amendment is a permissible exercise of Congress' Commerce Clause powers.

Because the Court finds that the Graves Amendment preempts all vicarious liability claims against the Lessor Defendants, including those premised on Fla. Stat. § 324.021(9)(b)(2), and that the Graves Amendment is a constitutional exercise of Congress' powers under the Commerce Clause, the Garcia and Ruiz Plaintiffs' claims cannot go forward against any of the Lessor Defendants.  Accordingly, upon due consideration, it is hereby ORDERED and ADJUDGED that:

(1)    Defendants Vanguard Car Rental USA, Inc.'s, Vanguard Rental (Belgium) Inc.'s, National Rental (US) Inc.'s, Alamo Financing, L.P.'s, and Alamo Rent-A-Car (Canada) Inc.'s Motion for Summary Judgment (Doc. 26) is GRANTED;

---

[19]Both sides have presented numerous orders from various trial courts throughout the state of Florida, but these conflicting rulings are neither binding nor persuasive to this Court and do not provide any analysis as to how the courts reached their decisions.  As such, the Court will not consider any of these unpublished orders.  See Progressive Express Ins. Co. v. McGrath Community Chiropractic, 913 So. 2d 1281 (Fla. 2d DCA 2005) (a Florida circuit court order that provides a result without a written opinion cannot act as precedent in future cases).

(2)     Defendants Vanguard Car Rental USA, Inc., Vanguard Rental (Belgium) Inc., National Rental (US) Inc., Alamo Financing, L.P., and Alamo Rent-A-Car (Canada) Inc., are entitled to judgment in their favor as to all claims brought against them by the Garcia Plaintiffs asserted in Case No. 5:06-cv-220-Oc-10GRJ;

(3)     Defendants Vanguard Car Rental USA, Inc., Vanguard Rental (Belgium) Inc., National Rental (US) Inc., Alamo Financing, L.P., and Alamo Rent-A-Car (Canada) Inc., are entitled to judgment in their favor as to all claims brought against them by the Ruiz Plaintiffs asserted in Case No. 5:06-cv-221-Oc-10GRJ;

(4)     The Clerk is directed to withhold the entry of final judgment in the Garcia and Ruiz cases pending resolution of the remaining claims against Defendant Gregory Davis;

(5)     With respect to Case No. 5:05-cv-422-Oc-10GRJ, the declaratory judgment action, the Clerk is directed to enter judgment in favor of Petitioners Vanguard Car Rental USA, Inc., National Rental (US), Inc., and Alamo Financing, L.P. and against Respondents the Estate of Jose L. Garcia and the Estate of Nelson Agustin, declaring that the Graves Amendment, 49 U.S.C. § 30106, preempts all state law vicarious liability claims against the Petitioners, including those that may be premised on Fla. Stat. § 324.021(9)(b)(2), as brought by the Respondents with respect to the February 2, 2005 car accident in Marion County, Florida, and therefore the Petitioners are not vicariously liable to the Respondents for any damages resulting from that accident.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 5th day of March, 2007.

UNITED STATES DISTRICT JUDGE

Copies to:    Counsel of Record